# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HASU SHAH,                          :        CIVIL ACTION NO. 1:12-CV-2196
                                    :
    Plaintiff,  :        (Chief Judge Conner)
                                    :
  v.                      :
                                    :
HARRISTOWN DEVELOPMENT              :
CORPORATION, *et al.*,              :
                                    :
    Defendants   :

## <u>MEMORANDUM</u>

  This is an antitrust action filed by plaintiff Hasu Shah ("Shah") against

defendants Harristown Development Corporation ("Harristown Development"),

Harristown Holding Company, Inc. ("HHC"), Harristown Hotel Associates, L.P.

("HH Associates"), Harrisburg Hotel Corporation ("HH Corp."), Russell C. Ford

("Ford"), William D. Kohl ("Kohl"), 2012 Harrisburg Investment LLC ("2012

Harrisburg"), Greenwood Hospitality Group, LLC ("Greenwood"), and Thomas W.

Conran ("Conran").  Shah alleges that defendants violated the Sherman Antitrust

Act, 15 U.S.C. § 1, *et seq.* ("the Sherman Act"), and also committed several state law

violations, during the sale of the Harrisburg Hilton Hotel and Towers ("the

Harrisburg Hilton").  Presently before the court is defendants' motion (Doc. 30) to

dismiss.  For the reasons that follow, the court will grant the motion.

# I.  **Background**[1]

In 1984, Harrisburg authorities decided to create a hotel and office building complex on Market Square in downtown Harrisburg.  (Id. ¶ 32).  This development quickly became the "'Number One' priority" for the administration of former Harrisburg Mayor Stephen Reed.  (Id. ¶¶ 32-33).  In October 1990, this priority became reality with the opening of the Harrisburg Hilton.  (Id. ¶ 25).  The opening was a major breakthrough in the reformation of the Second Street corridor of Harrisburg and a significant coup for Harrisburg city officials.  According to the amended complaint, the Harrisburg Hilton has quickly become "one of the most attractive investment and development properties in downtown Harrisburg."  (Id. ¶ 100).

Until June 2012, Harristown Development, through its wholly-owned subsidiary HHC and its affiliates HH Associates and HH Corp., owned and operated the Harrisburg Hilton.  (Doc. 28 ¶ 25).  HH Associates held legal ownership of the Harrisburg Hilton.  (Id. ¶ 39).  HH Corp. was responsible for managing the daily affairs of HH Associates, including any matters related to the ownership and maintenance of the Harrisburg Hilton.  (Id. ¶ 40).  At times relevant to the amended complaint, Kohl was the President and CEO of HH Corp.; as set forth in the

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the amended complaint.  See *infra* Part II.  The court has disregarded those portions of the amended complaint which are merely legal conclusions or a formulaic recitation of the elements of a cause of action.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).

amended complaint, Kohl is now a principal of Greenwood, the present owner and operator of the Harrisburg Hilton. (Id. ¶¶ 7, 41). Ford is the President of both Harristown Development and HHC as well as Vice President of HH Corp. (Id.) All of these various subsidiaries and affiliates of Harristown Development ultimately consolidate under Harristown Development's umbrella for tax reporting purposes.[2] (Id. ¶ 42).

Shah is a very successful and experienced hotelier, with ownership interests in over one hundred hotels. (Id. ¶ 48-51). Shah conducts business predominantly through his various companies, Hersha Hospitality Management and Hersha Hospitality Trust. (Id. ¶¶ 50-53). Over the course of the past twenty years, Shah has repeatedly vocalized his interest in owning the Harrisburg Hilton to former Mayor Reed. (Id. ¶ 55). In 2007, former Mayor Reed and Ford allegedly advised Shah that he would be "the first to be called" if the Harrisburg Hilton ever became available for sale because he was "an obvious choice" to purchase it. (Id. ¶¶ 57, 60). However, Ford and Shah never discussed a specific "price or process" for the sale of the Harrisburg Hilton. (Id. ¶ 60).

On June 29, 2012, HH Associates sold the Harrisburg Hilton to 2012 Harrisburg, a subsidiary of Greenwood, for $21.5 million dollars. (Id. ¶ 46, 63). According to the amended complaint, this purchase price is "substantially below" the property's market value. (Id. ¶¶ 46, 74, 75, 78, 115). Conran is a principal of

_____

[2] Throughout the amended complaint, Shah refers to this web of entities collectively as "Harristown Development." (Doc. 28 ¶ 42).

Greenwood. (Id. ¶ 10). Shah alleges that Conran provided Kohl with an ownership interest in Greenwood "as a quid pro quo" for Kohl "to deliver" the Harrisburg Hilton to Greenwood. (Id. ¶¶ 86, 93-96). The amended complaint also alleges that Ford and Kohl used their "insider positions" and acted in concert to "fix the sale price" and "push through the sale" of the Harrisburg Hilton to Greenwood. (Id. ¶¶ 73, 96, 98 107)

The amended complaint lists a number of motivations catalyzing the sale. (Id. ¶¶ 87-106). For example, it states that, had Shah purchased the Hilton, Kohl "could well have found himself out of a job." (Id. ¶¶ 88, 91). The sale to Greenwood provided Kohl with an opportunity to leave his "charitable perch" and move to the "for-profit" world where he could enjoy a "substantial salary" and profit from Greenwood's operation. (Id. ¶ 101). The amended complaint further asserts that Ford would have had "no further purpose" if Shah had purchased the hotel because Harristown Development "would have become obsolete." (Id. ¶¶ 92, 106).

The amended complaint also alleges that a number of different people were harmed by the Harrisburg Hilton sale. Shah was allegedly harmed because he was denied "the promised opportunity" to purchase the Harrisburg Hilton and "derive revenues and profits" from its operation. (Id. ¶ 108). Nearby property owners were purportedly harmed because the below-market-value sale caused nearby property values to be "artificially depressed." (Id. ¶ 109). According to the amended complaint, other hotel owners in the area were similarly harmed "because hotels are valued with regard to comparable sales." (Id. ¶¶ 110, 116). Finally, the amended

4

complaint alleges that the below-market sale ensures that no competitor will be able to construct a new hotel in downtown Harrisburg because it would be "cost prohibitive." (Id. ¶ 118).

On November 2, 2012, Shah filed a complaint against all defendants alleging an agreement and a conspiracy to restrain trade and commerce in violation of § 1 of the Sherman Act, as well as state tort violations of tortious interference with prospective business relations, unfair competition, and civil conspiracy. (Doc. 1). Following defendants' initial motion (Doc. 10) to dismiss, Shah filed an amended complaint (Doc. 28) alleging additional antitrust violations under § 2 of the Sherman Act. Defendants filed the instant motion (Doc. 30) to dismiss on March 25, 2013. The motion is fully briefed and ripe for disposition.

## II.  **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.  **Discussion**

Defendants seek to dismiss the entirety of Shah's amended complaint, asserting that Shah fails to state a claim for antitrust violations under §§ 1 and 2 of the Sherman Act and for the state law claims of tortious interference with prospective business relations, unfair competition, and civil conspiracy. Defendants also allege that the amended complaint fails to plead the antitrust claims against Harristown Development, HHC, and Ford with specificity.  The court will address each issue in turn.

### A.  Counts I-IV: Antitrust Violations

Count I of the amended complaint alleges an unlawful agreement to restrain trade and commerce in violation of § 1 of the Sherman Act, against defendants Greenwood, 2012 Harrisburg, Harristown Development, Kohl, Ford, and Conran. Counts II-IV allege violations of § 2 of the Sherman Act.  Specifically, Count II alleges a conspiracy to restrain trade and commerce against all defendants.[3]  Count III alleges a conspiracy to violate § 2 through the conferral of a monopsony against

---

[3] Shah's amended complaint alleges that a conspiracy to restrain trade and commerce violates § 2, but conspiracies to restrain trade and commerce are actually prohibited under § 1.  (Doc. 28 ¶¶ 140-146).  See also 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal.").  Shah appears to acknowledge this in his opposition brief, in which he only discusses the application of § 2 to Counts III and IV.  (See Doc. 40 at 21).  The facts and allegations undergirding Count II in the amended complaint also fall more closely under § 1's provisions.  For purposes of this motion, the court will treat Count II as alleging a violation of § 1.

all defendants.  Finally, Count IV alleges an attempted and continued

monopolization against Harristown Development, HHC, and HH Corp.

Section 1 of the Sherman Act declares that any contract or agreement "in

restraint of trade or commerce" is illegal.  15 U.S.C. § 1.  Section 2 of the Sherman

Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or

conspire with any other person or persons, to monopolize any part of the trade or

commerce among the several States . . . ."  15 U.S.C. § 2.

Defendants contest Shah's antitrust standing and the adequacy of his

pleadings concerning defendants' economic power and the relevant market.

Defendants further allege that Shah failed to plead that the sale of the Harrisburg

Hilton unreasonably restrained competition under § 1 or that defendants sought or

obtained an unlawful monopoly or conferred an unlawful monopsony under § 2.

Defendants also contend that the amended complaint does not plead antitrust

claims against Harristown Development, HHC, HH Corp., and Ford with sufficient

clarity.  The court finds that Shah has failed to allege with requisite specificity the

relevant market and defendants' economic power within that market.  Therefore,

the court is unable to determine whether the amended complaint adequately pleads

Shah's antitrust standing or his claims under § 1.  Moreover, regardless of the

relevant market, Shah fails to state a claim under § 2.

1.  *Relevant Market and Market Power*

The parties agree that each of Shah's antitrust claims require the court to

conduct an analysis of defendants' economic power and the relevant market.

8

Defendants claim that Shah's definition of the relevant geographic and product market varies throughout the amended complaint and is unacceptably vague. A relevant product market is defined as those "commodities reasonably interchangeable by consumers for the same purposes." United States v. E.I. Du Pont de Nemours & Co., 351 U.S. 377, 395 (1956). Products within the same relevant product market typically enjoy cross-elasticity of demand: the rise of the price of one good within the market creates a greater demand for other similar goods within the market. Id. at 380, 400. The court may grant a motion to dismiss when the plaintiff fails to reference the rule of reasonable interchangeability and cross-elasticity of demand in its proposed relevant market or when the plaintiff proposes a relevant market that does not include all reasonably interchangeable products. Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997). Further, the relevant geographic market is defined as the "area in which a potential buyer may rationally look for the goods or services he or she seeks." Pennsylvania Dental Ass'n v. Med. Serv. Ass'n of Pennsylvania, 745 F.2d 248, 260 (3d Cir. 1984).

Defendants also allege that Shah does not adequately plead defendants' economic power within the relevant market. Monopoly power is "the ability to control prices and exclude competition in a given market." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 307 (3d Cir. 2007). A company typically possesses monopoly power if it may profitably raise the price of its product. Id. A slightly more discrete power, monopsony power, confers "substantial power on the buy side

of the market," enabling a company "to bargain aggressively when negotiating the prices it will pay for goods and services." West Penn Allegheny Health Sys., Inc., v. UPMC, 627 F.3d 85, 103 (3d Cir. 2010). The court will typically examine the company's market share within the relevant market to determine the company's market power. See, e.g., Univac Dental Co. v. Dentsply Intern., Inc., Civ. A. No. 1:07-CV-0493, 2008 WL 2486134, at *4 (M.D. Pa. June 17, 2008).

Shah sets forth two distinct markets in the amended complaint. The primary relevant market is "all investment-grade hotels within downtown Harrisburg." (Doc. 28 ¶¶ 122, 123). Shah defines an "investment-grade hotel" as one "in which institutional, private equity, or public company investors would invest or consider investing." (Doc. 28 at 21 n.2). According to Shah, the Harrisburg Hilton is the only investment grade hotel in downtown Harrisburg and it encompasses the entirety of the proposed relevant market. (Doc. 28 ¶¶ 148-149; Doc. 40 at 8-12). Shah also pleads a secondary relevant market of all hotels within a ten-mile radius of the Harrisburg Hilton "whose values will be diminished when appraised in light of the sale price of the Harrisburg Hilton." (Doc. 28 ¶¶ 116, 120, 121).[4]

---

[4] In other areas of the amended complaint, Shah's description of the relevant product and geographic market is something of a moving target. Shah alleges that Harristown Development, HHC, and HH Corp. held a monopoly "[a]s owners of the only investment grade hotel in downtown Harrisburg with easy access to Pennsylvania's Capitol, the offices of Pennsylvania's state agencies, and the other apparatuses and appurtenances of Pennsylvania's state government." (Doc. 28 ¶¶ 148, 159, 160). Elsewhere, he references both investment grade hotels and non-investment grade hotels "in and around Harrisburg" or "in downtown Harrisburg." (Id. ¶¶ 149, 154, 155, 156, 157, 162, 163, 164, 165).

Viewing the allegations in the light most favorable to Shah, the court nevertheless concludes that Shah has not adequately delineated his two proposed relevant markets. Indeed, the second proposed relevant market contradicts the very existence of the first: by asserting that other hotels within a ten-mile radius will have their values diminished when appraised in light of the sale price of the Harrisburg Hilton, Shah essentially admits that those hotels are reasonably interchangeable and enjoy cross-elasticity of demand with the Harrisburg Hilton. (See, e.g., Doc. 28 ¶¶ 110) ("Other hotel owners in the Harrisburg area were harmed because hotels are valued with regard to *comparable sales* so that any below market sale has the effect of driving down prices in the market for hotels.") (emphasis added). The sale of the Harrisburg Hilton affected the prices of non-investment grade hotels with an approximate ten-mile radius. Therefore, a relevant market that only includes investment-grade hotels within downtown Harrisburg clearly does not include all reasonably interchangeable products.

Shah also fails to allege with reasonable clarity the purported distinction of an investment-grade hotel. Shah merely points to allegations in the amended complaint that the Harrisburg Hilton is "one of the most attractive investment and development properties in downtown Harrisburg" and is "one of the most important properties in downtown Harrisburg." (See Doc. 28 ¶¶ 100, 103, 148; Doc. 40 at 12). These allegations are insufficient. The complaint fails to demonstrate the significance of the distinction between investment-grade and non-investment grade hotels from the perspective of a potential hotel purchaser. The proposed relevant

11

market of "all investment grade hotels in downtown Harrisburg" is too narrowly defined and the court must reject it.

Shah's proposed secondary market – all hotels within an approximate ten-mile radius of the Harrisburg Hilton whose values will be diminished when appraised in light of the sale price of the Harrisburg Hilton – also fails. Plaintiff's tactic of defining this relevant secondary market based on the allegedly offending act fails the rule of reasonable interchangeability and ignores cross-elasticity of demand. Indeed, assuming that Shah's proposed secondary market is an appropriate relevant market, Shah fails to allege that the Harrisburg Hilton possesses market power within this secondary market. The only references to market power in the amended complaint concern the primary, investment-grade hotel market. (Id. ¶¶ 148, 149, 159). The amended complaint focuses on the Harrisburg Hilton's exclusive market share – purportedly 100 percent – within the primary, investment-grade hotel market. (See Doc. 40 at 11-12). For all of these reasons, the court must reject plaintiff's characterization of both the primary and secondary relevant markets.

       2.    *Antitrust Standing and § 1 Claims*

Without a valid relevant market and sufficient allegations of defendants' market power within that market, it is impossible for the court to analyze the sufficiency of Shah's allegations concerning antitrust standing and his § 1 claims. The analysis of antitrust standing requires the court to determine whether the plaintiff's injury is one for which the antitrust laws were designed to provide

redress.[5]  See Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519 (1983); In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1165-66 (3d Cir. 1993).  The antitrust injury must be attributable to an anticompetitive "aspect or effect" of defendants' behavior.  Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 344 (1990).

Moreover, to determine whether the contract or agreement at issue unreasonably restrained trade or commerce under § 1, the court must examine whether the contract or agreement at issue produced anticompetitive effects in the relevant market.  West Penn Allegheny Health Sys., Inc., v. UPMC, 627 F.3d 85, 100 (3d Cir. 2010).  The court is unable to determine the anticompetitive effects of defendants' behavior without proper allegations of the relevant market and defendants' market power.  Hence, the court is currently unable to analyze the

_____

[5] Ordinarily, the question of an antitrust injury cannot be resolved in the context of a motion to dismiss.  Schuykill Energy Res. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997).

sufficiency of Shah's allegations concerning antitrust standing and his claim for relief under § 1.[6]

3.    *Section 2 Claims*

Regardless of the relevant market and defendants' power within that market, Shah cannot adequately allege an unlawful monopoly or monopsony for his § 2 claims. Under Count III, Shah alleges that Harristown Development, HHC, and HH Corp. maintained a monopolistic power as the owners of the only investment grade hotel in downtown Harrisburg. (Doc. 28 ¶ 148). Shah contends that by selling the Harrisburg Hilton to Greenwood, defendants Harristown Development, HHC, and HH Corp. conferred a monopsony upon Greenwood and 2012 Harrisburg. (Id. ¶ 149). As discussed *supra*, a company holds monopsony power as a buyer when it is able to effectively dictate the prices it will pay for certain goods and services. West Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 103 (3d Cir. 2010). Monopsony power is typically only subject to scrutiny under the antitrust laws if it

---

[6] Defendants also assert that the amended complaint fails to plead the antitrust claims against Harristown Development, HHC, HH Corp., and Ford with specificity. Assuming that Shah is able to remedy the deficiencies otherwise found in the amended complaint for Counts I and II, the court finds that the amended complaint provides sufficient factual allegations against Ford to raise Shah's right to relief above the speculative level. (See Doc. 28 ¶¶ 6, 14-17, 41, 57, 59-62, 64, 73, 76, 84, 90, 92, 94, 95, 97- 99, 102, 103, 106, 107, 114, 129, 132-135, 137). However, Shah's collective reference to Harristown Development, HH Corp., HHC, and HH Associates as "Harristown Development" is problematic in that it obfuscates the factual basis for each entity's liability. Further, in his opposition brief, Shah claims that Harristown Development, HHC, and HH Corp. are liable through the imputation of Ford and Kohl's wrongful actions as corporate officers. (Doc. 40 at 31-32). This theory of liability is not clearly presented as a basis of liability in the amended complaint.

is exercised pursuant to a conspiracy.  Id.  To state a § 2 conspiracy claim, Shah

must adequately plead (1) that defendants possessed an agreement to monopolize

(or, in this case, to confer a monopsony); (2) that defendants engaged in an overt act

in furtherance of that agreement; (3) that defendants possessed the specific intent

to monopolize (or to confer a monopsony); and (4) a causal connection between the

conspiracy and the injury alleged.  Howard Hess Dental Lab. Inc. v. Dentsply

Intern., Inc., 602 F.3d 237, 253 (3d Cir. 2010).

    In the case *sub judice*, the amended complaint is devoid of factual allegations

establishing that Harristown Development, HHC, and HH Corp. conspired to confer

a monopsony upon Greenwood and 2012 Harrisburg.  The amended complaint

alleges that these defendants agreed upon the terms for the sale and purchase of a

hotel; it does not aver facts enabling the court to infer that Greenwood and 2012

Harrisburg possessed "substantial power on the buy side of the market" or that

they acquired such buying power as a result of the Harrisburg Hilton sale.

Ostensibly, they offered favorable terms for the purchase of the Harrisburg Hilton

to which Harristown Development, HHC, and HH Corp. agreed.  That Harristown

Development, HHC and HH Corp. did not consult with other prospective buyers

before deciding to sell the Harrisburg Hilton to Greenwood and 2012 Harrisburg is

simply irrelevant.  If the court were to hold otherwise, it would imply that every sale

of a rare or highly sought-after product or service on favorable terms constitutes a

violation of § 2.

Similarly, Shah has not properly set forth claims for monopolization or attempted monopolization in Count IV. To state a claim for monopolization under § 2, Shah must adequately plead that defendants (1) possess monopoly power in the relevant market; and (2) willfully acquired or maintained that power "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Broadcom Corp. v. Qualcomm, Inc., 501 F.3d 297, 307 (3d Cir. 2007) (quoting United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966)). To properly state a claim for attempted monopolization under § 2, Shah must adequately plead that (1) defendants engaged in predatory or anti-competitive conduct; (2) defendants possessed the specific intent to monopolize; and (3) there was a dangerous probability of achieving monopoly power. Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 442 (3d Cir. 1997) (quoting Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993)). The dangerous probability prong requires Shah to plead defendants' economic power in the relevant market. Spectrum Sports, Inc., 506 U.S. at 459.

Shah alleges that Harristown Development held a monopoly "on the broader development of downtown Harrisburg" and that its "hand selection of economic winners and losers in Harrisburg . . . constitutes a willful acquisition and maintenance of its monopoly powers." (Doc. 28 ¶¶ 160, 161). Shah further alleges that Harristown Development's "hand selection of Greenwood" as the purchaser of the Harrisburg Hilton "constitutes a willful continuation of monopoly powers in the market of investment-grade hotels in downtown Harrisburg" and that Harristown

16

Development "effectively conferred its monopoly position to Greenwood." (Id. ¶¶ 162, 164). Shah also contends that the sale of the Harrisburg Hilton "maintained Harristown Development's larger monopoly power over the development of downtown Harrisburg" because it allowed "Harristown Development to remain as the gatekeeper of the downtown Harrisburg market." (Id. ¶ 165).

Even assuming that these defendants possessed monopoly power in the relevant market, the court cannot reasonably infer from the allegations that defendants specifically intended to monopolize, as required for a claim of attempted monopolization, or willfully acquired or maintained that monopoly power, as required for a claim of completed monopolization. The reason lies in the sale itself. Harristown Development did not retain or attempt to retain its alleged monopoly over the market of investment-grade hotels in downtown Harrisburg. Rather, as Shah acknowledges in his amended complaint, it "conferred its monopoly position" to Greenwood and 2012 Harrisburg. (Id. ¶ 164). The court agrees with defendants (see Doc. 33 at 22) that an existing monopoly's change of ownership is not, by itself, an antitrust violation. See Brunswick Corp. v. Riegel Textile Corp., 752 F.2d 261, 266 (7th Cir. 1984) (holding that the "shift[] of a lawful monopoly into different hands" "has no antitrust significance."). The mere demonstration of anticompetitive conduct does not establish a § 2 violation when it is impossible for that alleged anticompetitive conduct to result in the achievement or furtherance of monopoly power.

Shah's broader contention that Harristown Development enjoys a larger monopoly over the development of downtown Harrisburg is similarly problematic. Shah asserts that Harristown Development handpicks the "economic winners and losers in Harrisburg." (Doc. 28 ¶ 161). This assertion is vague and overly speculative: the amended complaint contains no factual support for this assertion beyond the sale at issue. The development of downtown Harrisburg is not identified as a relevant market, nor is such a description contemplated as a relevant market under the federal antitrust laws. Moreover, the amended complaint lacks any factual averments elucidating how the sale of the Hilton furthered Harristown Development's "larger monopoly power." In sum, there is no factual support for the conclusory assertion that the sale of the Hilton ensured that Harristown Development may remain as "the gatekeeper of the downtown Harrisburg market." (Doc. 28 ¶ 165). The amended complaint fails to connect any causal link between the sale of the Harrisburg Hilton and defendants' continued control over the "downtown Harrisburg market." The only remaining link between Harristown Development and the new owners of the Harrisburg Hilton is through Kohl, who is not even listed as a defendant for Count IV. Hence, the amended complaint fails to establish any claim under § 2 of the Sherman Act.

B. <u>Counts V-VII: State Law Claims</u>

Defendants assert that Shah has failed to set forth sufficient facts for his state law claims of tortious interference with prospective business relations, unfair

competition, and civil conspiracy under Counts V-VII of the amended complaint. The court will address each claim *seriatim*.

### 1. *Tortious Interference with Business Relations*

Pennsylvania has adopted the standard of the Restatement (Second) of Torts § 766 to determine the elements of a tortious interference claim. See <u>Glenn v. Point Park College</u>, 272 A.2d 895 (Pa. 1971); <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 470-71 (Pa. 1979). In order to state a *prima facie* claim under § 766, the amended complaint must allege that 1) there existed a prospective contractual relationship between the parties; 2) defendants specifically intended to harm Shah by preventing the contractual relationship from occurring; 3) defendants' actions were not privileged or justified; and 4) Shah incurred actual damages as a result of defendants' conduct. <u>Thompson Coal Co.</u>, 412 A.2d at 471. Defendants assert that Shah does not sufficiently plead any of these elements.

A prospective contractual relationship "is something less than a contractual right, [but] something more than a mere hope." <u>Id.</u> The amended complaint must plead that, but for defendants' interference, it was reasonably plausible that Shah would have purchased the Harrisburg Hilton. <u>General Sound Tel. Co. v. AT & T Commc'n., Inc.</u>, 654 F. Supp. 1562, 1565 (E.D. Pa. 1987). The second element requires a plaintiff to plead that defendants acted "[f]or the purpose of causing harm" to Shah. <u>Glenn</u>, 272 A.2d at 899. The amended complaint must also establish that defendants' conduct was not privileged or justified. <u>Id.</u> The second and third elements are closely related because a defendant's intentional conduct is

often done "at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff." Id. In analyzing defendants' intent and whether their conduct was privileged or justified, the court must determine whether defendants' conduct is "sanctioned by the 'rules of the game' which society has adopted." Id. Defendants argue that they did not possess the specific intent to harm Shah. Defendants also contend that their conduct was protected under the competitor's privilege. See CGB Occupational Therapy Inc. v. RHA Health Serv., Inc., 357 F.3d 375, 388 (3d Cir. 2004) (citing RESTATEMENT (SECOND) OF TORTS § 768). The competitor's privilege applies if a defendant does not employ wrongful means, does not create or continue an unlawful restraint of trade, and the defendant's purpose is at least partially to advance his own competitive interests. Id.

The court is unable to determine whether defendants' conduct was privileged at this early stage in the litigation. The court is only analyzing the well-pleaded factual allegations contained in the amended complaint. Without an evidentiary record, the court cannot ascertain whether defendants employed wrongful means or created an unlawful restraint of trade. The amended complaint provides sufficient allegations, albeit tenuous, concerning defendants' specific intent to harm Shah. Specifically, the amended complaint alleges that each of the individual

defendants possessed personal motivation to prevent Mr. Shah from purchasing the Harrisburg Hilton.[7] (Doc. 28 ¶¶ 86-103).

However, the amended complaint does not, and cannot, adequately allege a prospective contractual relationship between the parties. The parties engage in a lengthy semantics battle over whether Shah was provided with the opportunity to "bid" or the opportunity to "purchase" the Harrisburg Hilton, but it is ultimately irrelevant: the allegations do not delineate more than Shah's mere hope of a contractual relationship. According to the amended complaint, Ford repeatedly promised Shah that he would be "the first to be called" if the Harrisburg Hilton ever became available for sale.[8] (Doc. 28 ¶ 57). This allegation falls substantially short of that which is necessary to state a contractual agreement. Ford simply stated that he would "turn first" to Shah as the "obvious choice" to purchase the Harrisburg Hilton if it became available for sale. (Id. ¶ 59). The amended complaint

_____

[7] Defendants assert that personal motivation is irrelevant because the amended complaint does not allege that Greenwood, 2012 Harrisburg, Kohl, or Conran knew of Ford and Shah's alleged agreement. (Doc. 33 at 27). The complaint does not allege these defendants' actual knowledge of Ford's representations to Shah, but it nonetheless alleges that Conran and Greenwood (and thus impliedly 2012 Harrisburg) knew that Shah was "an obvious candidate to purchase the Harrisburg Hilton." (Id. ¶¶ 81, 82). Additionally, the court may reasonably infer that Kohl was aware of Ford's representations due to their business relationship as executives of HH Corp. (Id. ¶ 41).

[8] Shah cannot assert a tortious interference claim against Ford under any circumstances because Ford is a party to the alleged contractual relationship. See Corr. U.S.A. v. McNany, 892 F. Supp. 2d 626, 636-37 (M.D. Pa. 2012) ("[U]nder Pennsylvania law 'a tortious interference claim cannot be asserted against a party to the contract.'") (quoting Kernaghan v. BCI Commc'n., Inc., 802 F. Supp. 2d 590, 596 (E.D. Pa. 2011)).

does not set forth any facts establishing a reasonable probability that, but for defendants' actions, Shah would have purchased the Harrisburg Hilton. To the contrary, the amended complaint makes it clear that the parties never discussed or agreed upon any specific terms of the purchase because the Harrisburg Hilton was not for sale at the time of Ford's purported statement. (Id. ¶ 60). Based on the facts as alleged in the amended complaint, another individual or company could have purchased the Harrisburg Hilton simply by offering better terms than Shah. Indeed, in the amended complaint, Shah specifically laments that he "was not afforded the promised opportunity to purchase the Harrisburg Hilton in *a market-driven, sale process*" and that the Harrisburg Hilton was sold "without *any competition*, including competition from Mr. Shah." (Id. ¶¶ 70, 98) (emphasis added). Plainly, the amended complaint does not sufficiently plead a prospective contractual relationship between the parties.

Moreover, the amended complaint does not, and cannot, adequately allege that Shah incurred actual damages as a result of defendants' conduct. The amended complaint itself requests "reasonably ascertainable lost profits, in amounts to be proven at trial." (Doc. 28 ¶ 176). A plaintiff may recover lost profits resulting from a tortious interference if 1) the damages are established with reasonable certainty; 2) the interference was the proximate cause of the damages; and 3) the damages were reasonably foreseeable. Brisbin v. Superior Valve Co., 398 F.3d 279, 289 (3d Cir. 2005); see also Corr. USA v. McNany, 892 F. Supp. 2d 626, 642 (M.D. Pa. 2012) (applying this rubric to a tortious interference with an existing

contractual relationship claim). In light of the tenuous nature of Ford's

representations to Shah, Shah's damages are unknowable.

For all of these reasons, the court finds that the complaint does not

adequately allege the elements of tortious interference with a prospective

contractual relationship. Hence, the court will dismiss Count V of the complaint.

2. *Unfair Competition*

In Count VI, Shah alleges that Greenwood, 2012 Harrisburg, Kohl, Ford, and

Conran engaged in unfair competition. Traditionally, under Pennsylvania law, an

unfair competition claim is defined as the "passing off" of a competitor's goods as

one's own. Scanvec Amiable Ltd. v. Chang, 80 Fed. App'x 171, 180 (3d Cir. 2003).

Pennsylvania courts have expanded the term to include a host of other torts such as

trademark or patent infringement, tortious interference with contract, improper

inducement of another's employees, and unlawful use of confidential information.

See Granite State Ins. Co. v. Aamco Transmissions, Inc., 57 F.3d 316, 319 (3d Cir.

1995); Synthes (U.S.A.) v. Globus Med., Inc., Civ. A. No. 04-1235, 2005 WL 2233441,

at *8 (E.D. Pa. Sept. 14, 2005).

Several Pennsylvania Courts of Common Pleas, and our sister court, have

applied the definition of unfair competition found in § 1 of the Restatement (Third)

of Unfair Competition. See, e.g., Eagle v. Morgan, Civ. A. No. 11-4303, 2013 WL

943350, at *16 (E.D. Pa. March 12, 2013); ID Sec. Sys. Canada, Inc. v. Checkpoint

Sys., Inc., 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003); Babiarz v. Bell Atl.-Pa., Inc.,

No. 1863, 2001 WL 1808554, at *9 (Pa. Ct. Com. Pl. July 10, 2001); Lakeview

<u>Ambulance & Med. Servs., Inc. v. Gold Cross Ambulance & Med. Serv., Inc.</u>,

No. 194-2166, 1995 WL 842000, at *1-2 (Pa. Ct. Com. Pl. Oct. 18, 1995).  The

Restatement provides that "[o]ne who causes harm to the commercial relations of

another by engaging in a business or trade is not subject to liability to the other for

such harm unless . . . the harm results from . . . other acts or practices of the actor

determined to be actionable as an unfair method of competition."  RESTATEMENT

(THIRD) UNFAIR COMPETITION § 1.  The Restatement also indicates that "as a general

matter, if the means of competition are otherwise tortious with respect to the

injured party, they will also ordinarily constitute an unfair method of competition."

<u>Id.</u> CMT. G (1995).  No state appellate court has officially adopted the Restatement as

the standard for unfair competition claims in Pennsylvania.

Shah contends that he has a sufficient claim for unfair competition because

defendants violated 18 Pa. C.S.A. § 4108(a), which prohibits commercial bribery,

and because defendants tortiously interfered with Shah's prospective contractual

relationship.  The court has already determined that it will dismiss Shah's tortious

interference claim; therefore, the court will focus on the state statutory violation of

commercial bribery as the basis for Shah's unfair competition claim.

No Pennsylvania court has held that commercial bribery, as prohibited

under 18 Pa. C.S.A. § 4108(a), provides the factual predicate for an unfair

competition claim.  Commercial bribery under § 4108(a) does not translate into any

type of civil cause of action; rather, it is a criminal misdemeanor of the second

degree.  The parties do not identify, and the court is unaware of, any Pennsylvania

case recognizing a private right of action or civil claim for violations of § 4108(a).

Crediting his counsel's candor, the court notes that Shah acknowledges the

tenuous nature of his unfair competition claim, but urges the court to refrain from

dismissing it in light of its uncertain viability.  (Doc. 40 at 39) (citing Bldg. Mt'ls

Corp. of Am. v. Rotter, 535 F. Supp. 2d 518, 526 (E.D. Pa. 2008) (denying motion to

dismiss plaintiff's unfair competition claim in the hopes that Pennsylvania would

soon provide more guidance on the issue)).  Such restraint is unwarranted.  There is

no reasonable likelihood that Pennsylvania state courts will consider the viability of

commercial bribery as the basis for a civil unfair competition claim.  For all of these

reasons, Shah's amended complaint fails to state a claim for unfair competition.

> 3. *Civil Conspiracy*

Shah's claim for civil conspiracy in Count VII is similarly inadequate.  As a

predicate to liability for civil conspiracy, the complaint must allege a distinct

underlying tort.  Boyanowski v. Capital Area Intermed. Unit, 215 F.3d 396, 405 (3d

Cir. 2000); *In re* Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 789

(3d Cir. 1999).  Shah's civil conspiracy claim is based upon his underlying claim for

unfair competition.  (Doc. 28 at 32-33).  As discussed *supra*, Shah has failed to make

sufficient allegations to support his claim for unfair competition, and, therefore, he

cannot state a claim for civil conspiracy based upon unfair competition.  See *In re*

Orthopedic Bone Screw, 193 F.3d at 789 ("A claim of civil conspiracy cannot rest

solely upon the violation of a federal [criminal] statute for which there is no

corresponding private right of action.").  Thus, the court will dismiss Count VII for failure to state a claim.

C.    Leave to Amend

The court will grant the motion to dismiss for Counts I and II, Shah's antitrust claims under § 1, with leave to amend those claims to plead a relevant market, defendants' power within that market, and the other elements required for relief in accordance with this memorandum.  The court would be remiss if it did not express its reservations concerning the ability of plaintiff to correct the deficiencies highlighted *supra*.  Nevertheless, plaintiff's counsel is entitled to an opportunity to determine whether amendment of the complaint would bear fruit.  The court will grant the motion to dismiss for Counts III-VII without leave to amend because amendment would be clearly futile.  See Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (court may deny a request to amend the complaint if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."); Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983) (stating that amendment is futile if the amended complaint would not survive a motion to dismiss).

## IV.  Conclusion

For the above-stated reasons, the court will grant defendants' motion (Doc. 30) to dismiss.  The court grants the motion without prejudice to Shah's § 1 antitrust claims, but with prejudice to Shah's § 2 antitrust claims and state law claims.  An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:      December 13, 2013